All right. First case we'll hear this morning is Jaffe v. Samsung and Mr. Lampkin. When you're ready, we'll hear from you. Thank you, and good morning. May it please the court, my name is Jeff Lampkin. I'm here on behalf of the Solvency Administrator, Dr. Michael Jaffe. Congress enacted Chapter 15... How did you pronounce his name? Jaffe? Jaffe. It's not actually a German name, probably. You could not influence, but it's Jaffe. Pull that mic a little closer. Oh, I'm sorry. Thank you. Congress enacted Chapter 15 so that a debtor's assets and liabilities would be determined under a single source of law, the debtor's home country, in all but the most extreme circumstances. Chapter 15, therefore, mandates comity. Through foreign proceedings, subject only to a narrow exception, the court may refuse to take an act that would be manifestly contrary to public policy of this nation. That standard is familiar in international contexts, such as enforcement of foreign judgments and enforcement of foreign arbitral awards, and has long been limited to notions of morality and justice, not garden-variety economic legislation. Put differently... How about the antitrust laws? Would that be public policy? Would we recognize the interference with our monopoly laws? I think Congress has already addressed that, Your Honor, in Section 363, by making certain preclearance requirements already applicable. I think the answer would be, because of the state action doctrine, we already recognize that states can immunize what otherwise would be violations of the antitrust laws. I'm focusing on your definition of public policy, and I've got to believe that there are some economic decisions that we take that go to the heart of our public policy. Your Honor, I do not believe that private enforcement of antitrust laws would be within that exception. Public enforcement, the government's enforcement, involves separation of powers issues that are different in kind than simply eliminating private rights of action. And Congress specifically addressed that in Section 363, which is mandatorily applicable. I understand your characterization of public policy, but the notion that there is no economic public policy for our country is something that I would like to look at further. Certainly, Your Honor. Our whole thing depends on that. Yes, certainly, Your Honor. And we're not to say that... that it could ever be the fundamental public policy. I'll get to the, to save time, this is a fairly complex issue. I'll get to the core of what I'm interested in, and then my colleagues can do the same if they wish. It seems to me that the parties have tended to set up a tension between the German bankruptcy court and the American bankruptcy order. And I'm not sure that I see that in this case. And my question is really, would you focus based on a notion, for instance, if we had three American plants, manufacturing plants of a German company, and each plant was subject to a mortgage held by an American bank, would we be justified in releasing those assets to the German court subject to the liens of the banks on the property? In other words, we would say, you can take these properties, you can sell them, you can dispose of them, but you've got to do so subject to the liens that are recorded under American law. And if you want to strip those liens in Germany, fine. But with respect to what's going to be done in the United States, now that's my question, is can't a United States bankruptcy court say for protection of licensees who have spent billions in reliance on the licenses, why can't an American bankruptcy court say, you take these patents subject to the licenses that are on those patents, and you can do with them what you want. But as far as American law is property law, it's sort of like an NREM declaration. These assets have this characteristic. Now, that is one way of looking at it. The way that the government has postured the issue, and you're tending to posture it, is we're fighting with the German court and I'm not sure we have to do that at all. I think, Your Honor, with respect to property in the United States, Section 363, which deals with that issue, is mandatorily applicable. But German law and the United States law have long distinguished between contracts, non-exclusive licenses to use patents, and the property right that is the patent itself. The bankruptcy court points this out in footnote 17. Well, that's fair enough. That's fair enough. But it's still, for instance, let's just stick with that for a minute. If the American patent law said you have an exclusive right to use the patent for 17 years, and the German patent law said you have an exclusive right to use a patent for 15 years, it seems to me when the German court takes the American patent, they may say over there, we're not going to enforce it beyond 15 years, and we're not going to interfere with that. But we're going to say with respect to the United States, when you're going to enforce the patent, it's a 17-year period. And that's the nature of the American patent. And so the question is, could an American bankruptcy court say the same thing about licenses, about patents, saying this is a license that attaches to this patent, it's lawfully entered, and you're going to take that patent into the court, at least in respect to American enforcement, subject to the license. What's wrong with that? I think the answer to the question is no, because American law is very clear, as is German law, that a non-exclusive license doesn't actually give you any property interest or right in the patent itself. It's a personal contract, a promise not to sue. And the case in Sequitnot 17 and Joannex 254 explains German law on this. So let's stay away from the German law. But American law is absolutely clear beyond cattle that there is no property right in the patent by virtue of a non-exclusive license. It's nothing more than a personal promise not to sue. As a result, German law doesn't need access to the patent to act on the debtor's promise not to sue. Let me give you a hypothetical. You're making a lot of general statements which provoke a lot of questions. If you had a patent that you gave an exclusive license to another company for the period of the patent, would that person have a property interest? Exclusive licenses are treated differently from non-exclusive licenses, Your Honor. I don't know the precise rules for that. I do know the rule that the bankruptcy court for a non-exclusive license... I just don't know why it makes a difference. You call it a property interest. It seems to me a person who has a license under a patent for X number of years has an interest, an important interest, on which the American system says you can rely. The American system says that you're entitled to rely on a promise, but it is nothing more than a promise not to sue. And it's predictive. You can spend money on it. That's correct. Actually, in fact, these companies apparently... It's not weird. There's been a lot of money in reliance on these licenses. And German law and bankruptcy law generally... Let's not argue German law, because we're not going to fight the Germans on this. Bankruptcy law generally, Your Honor, illustrates expectations, contractual expectations. You may have a wonderful agreement with the sole supplier of something, a great contract. You may have a credit with them. But when they go into bankruptcy, that contract can be rejected. You can lose the credit and end up paying for the same thing twice. That's just the nature of bankruptcy law. And the difference between German law and American law here is solely who bears the burden of that. Do the creditors here, do the licensees here continue to enjoy the benefit of their licenses without paying anything? It's trying to set up a tension. What I'm suggesting to you, we're in an American bankruptcy court applying Chapter 15. And in that chapter, there is a discretionary provision under 1521 which can link in 1522 protection. And the bankruptcy judge exercised discretion and said we're going to afford protection in an American bankruptcy court with respect to American assets. And the German court can take those assets or the trustee can take those assets, the administrator, Mr. Yaffe, can take those assets and sell them subject to the licenses. But the question is to take that away, to put at risk this investment and then say, oh, we're going to renegotiate this under some international law that nobody knows the outcome is going to be, changes what an American court would do. The critical point about 1521, 1519, and 1522, Your Honor, is those apply to authority that is given to the foreign administrator under U.S. law. So if the foreign administrator asks for authority, the United States court can limit that authority to provide sufficient protection to all concerned. Where is the judge's discretion limited to all of those things that I asked for? Pardon? The judge's discretion on 1522 and 1521, where is it limited to just those things that I asked for? Well, section... In determining the condition that he can put on 1521 relief. Right, and 1521 relief is clear that it's for the protection of all creditors in granting powers to the foreign representative in the United States. It's not a license for the United States courts to reach across the ocean and determine what the scope of bankruptcy law should be in Germany. Let me tell you, I understand something, at least in terms of where we are, we started out on public policy exception. And this is a separate ground altogether. Public policy exception, if you seem to articulate, could apply to basically anything under this context when you're talking about statutory constitutional rights. And maybe we buy that. But even if we do, you still have to get over the sufficiently protected interest in 1522's protection over 1521. And I just don't understand how it is from that perspective. Maybe I should ask you to explain why, when a judge is fashioning those reliefs and there's broad discretion that's given to the judge, he can do it sua sponte. Why he cannot afford 365 relief? Your Honor, 1522, one thing it is not is sort of a lower threshold version of 1605 or 1506. It's not authority to say we're going to refuse to recognize the effect of foreign law. All it does is the court is saying, I'm giving you these powers as the first foreign bankruptcy administrator. I'm going to ensure that in the use of those powers, everybody is sufficiently protected. That is my authority. That's not what the order says. The order, the request by Mr. Yaffe was to take these American assets and dispose of them in the German bankruptcy. And the authority granted by the bankruptcy court was not to reach over and tell the Germans what to do. What it was is, we will give you authority to take these assets and dispose of them under Chapter 15, but subject to this protection, which is authorized by 1521 or 1522. With all due respect, Judge Niemeyer, there has not been an asset turnover order or a sales order, anything like that. The only thing the administrator asked was the authority to realize and manage the U.S. property, and there's nothing about that that would enable the district... What is it that you are saying limits the 1522 discretion? The authority of the court. Well, there's two things, Your Honor. First, the text says in granting authority under 1519 and 1521, in granting U.S. powers, you may ensure sufficient protection. That by its terms means protection against the powers you're granting. Second, it says that you're supposed to protect the interests of all concerned, all creditors, the estate. And one of the things that's odd about this case is that if you protect U.S. creditors, in this case, these are international creditors. Judge, didn't he do this long hearing and then in the process of the hearing, somewhere in the middle of that, it seems like he pointed out, you're not here with a worthless asset. I'm not making this totally worthless. There are other things you can do here that sort of balance that interest off. And when we look at our review of what the judge did because of this broad discretion that's there, why is this limit there? Your Honor, this is the single most significant asset of the estate. I think the testimony is it's at least half of the estate's value. So at this point, this is critical to the estate and critical to other creditors. And if U.S. puts its law ahead and throws a bunch of the creditors, says you will have this special treatment under U.S. law that others do not get under German law, they are being treated differently and better. But why is it not a valid thing? You have, on the one hand, you have interest with this technology and you think about innovation and all of the possibilities there, the investments there. On the other hand, you're looking at the value to the estate and then the judge makes this balance and says, okay, you still have something valuable here and you can access it too. But discretion in this case is not discretion to sort of rejigger priorities that we provided by U.S. law or foreign law and decide which you think is better or how to calibrate them. It's to protect legitimate interests of everybody concerned. And the objectors have a legitimate interest in being treated no worse under German law than anybody else's return. But they don't have a legitimate interest. We can't adjudicate German law. What we can do is declare the nature of American property  And the order does, in fact, talk about staying away from transferring, distributing, and asking that right be given to the administrator. And the right is given to the administrator to take American assets only. That's the limit of the American court, is focusing on the American assets and saying, we're subject to this protection. And the Germans take that. It's just like if the bank account has $6 in it subject to a $1 charge for handling, it seems to me the German court only gets $5. It doesn't get the full $6. And I think that's the key distinction here is they are acting on promises, not property. It is clear American law, undisputed American law, footnote 17 of the bankruptcy court, that a promise of a non-exclusive license is not property or any sort of lien or any sort of property interest in the patent. It is a personal contract between the two. Do you think any contract, any bilateral contract, has a property interest built in? Well, I think... A routine business contract, a bilateral. Is that a property interest in it? In a constitutional sense for takings, the contract rights themselves can be property. But, for example, if the U.S. District Court is adjudicating a dispute between a Los Angeles individual and someone who has a factory in China, you can... I'm trying to... You keep talking about the fact the license, you're diminishing the license interest to almost something in the future, whereas this is a paid-up license where they have relied on it and they have an interest in these patents and an American court could enforce that as a contract, right? As a promise, Your Honor, yes. What do you mean as a promise? The contract is a promise. We promise not to sue the federal... A bilateral contract is promises too, right? Exactly. Okay, but is there property in a bilateral contract, commercial bilateral contract? Constitutionally, you can have a property interest. Why constitutionally? Why not in the common sense? If you and I have a bilateral contract to do business and it's clear, don't we each have some kind of property interest in that? Your Honor, if that were the ruling of this court, that any time you have a contract that concerns a U.S. property, that the contract concerns it, the foreign court law does not apply and the U.S. has authority to apply its own law. Chapter 15's rule of comedy goes out the window. Foreign proceedings are all about promises. My question is, under American law, if you and I have a bilateral contract, do we have a property interest or not? Under American law, the bilateral contract would be a property interest, but you could wipe that out in bankruptcy under 365. And the question is, whose law applies to that promise? Where do you say it's clear law that these licenses aren't property interests? They're not property interests in the patent, and that is the footnote 17 of the Bankruptcy Court Opinion. There's federal circuit case after federal circuit case after federal circuit case saying they are personal contracts. They are promises of performance not contracts. But the contracts themselves could be property, couldn't they? They could, but... Not part of the patent. They could, but the debtor's home country, as a natural matter, acts on the debtor's promises and the debtor's contracts. The moment you take that away from the debtor's home country, Chapter 15, in respect to foreign law, goes out the window. Your Honor, I see my... You're going to talk about the American patent law. Pardon? American patent law. America issued the patents. The U.S. Patent Office issued them. And isn't the nature of the patent determined under American law? The nature of the patent, but not the... As a matter of fact, Your Honor, the licenses are determined under state law rules because federal has nothing to say about the licenses to their promises. It does a little bit. You can file them, and you can get priority by filing them. You can get equitable principles by filing them in the patent office. I mean, it's not as pure as you're suggesting. But the federal circuit law, and I'd encourage the court to look at that case and trace it back, and want to put it on 17. It's clear, clear, clear, Your Honor. These are personal promises. Before you sit, I want to make sure I understand your answer, at least in terms of the question I posed. 1521 allows for the relief. 1522 protects. The judge has very broad discretion on 1522. You say that's limited. Tell me where it is limited and how it's limited from a historical perspective. I'm trying to understand the limitation on that discretion the judge has on 1522 to set conditions. And here is a condition, 365N, that's being placed in the context of a four-hour hearing in which the judge does this balancing. And tell me, in terms of our review, how we go about reversing that if he has exercised that broad discretion for some of what it limited. The limit is, Your Honor, that this limits conditions imposed in granting authority to exercise powers under U.S. law that an insolvency administrator otherwise might not have. So, for example, if an insolvent... It's a condition. It's a condition he's looked at, and he has that limit in general. But then you've got this Article 15 that allows this ancillary proceeding, that allows this balancing of the interests, and that very broad discretion he's given, and then our review then looks to see, is it not, whether he abused it? Yeah, I think he exceeded the authority granted him because the authority granted him is limited to conditioning the powers he gave, not reaching across to do 1507. Textually, what it says is in granting relief. Section 1521 or 1522, Your Honor. Let's go right to that. It says, the court may grant relief under 1519 or 1521 or may modify it only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected. That means in granting this authority... So if he does those things, where is the limit? The limit is, you may limit the authority you grant. It's not a license to reach across and limit the authority that an insolvency administrator already has under foreign law. You keep saying that, and it's not fair. He did not direct the American proceeding at all. He is focused totally on American assets, and he's basically saying the reciprocity or the global cooperation is taken into account. This property will be released to that bankruptcy subject to protection. Your Honor, if that were what were intended to happen, then this within 365 would be a mandatory provision, like 363 is, which handles that type of... It's not mandatory because it's discretionary. It may not need protection, and there are conditions of why there's protection. 363 provides that sort of protection with respect to actual property. These are promises, Your Honor, and this is the type of thing... They're entitled protection. It says interests, the creditors' interests. Yeah, it's legitimate interests, Your Honor, and legitimate interests are not being treated better under U.S. law than you're treated under foreign law. They have no interest in being treated better than other creditors who are operating under German law. You keep adding these things, and you keep thinking this is a question of German law, and we're not capable of deciding the German law. Exactly, which is why all of this should be in the German courts to determine, without a superimposed imposition of U.S. law. The United States has participated in this cooperation only subject to the terms of Section 15. That's correct, Your Honor, which mandates comedy and provides a limit on giving powers to foreign administrators in the United States. One last thing, if I can do, I'm well into my time, but one of the key things is it requires you to balance the interests of all creditors. What is happening here is the objectors are allowed to continue using humundous intellectual property without paying anything of value anymore, while all other creditors, including ones who had licenses under German law... No, Your Honor. I thought they gave the rights for them to use their patents, and you have this agreement which both parties completed and gave rights to and then relied on. There's not continuing royalties worth it. Up to this point, there was a continuing exchange. You allow us to use your licenses. We allow you to use yours. Our proposal in the Rand offer is simply to say because that is no longer a value to you to give to us, we're no longer your competitor. It's no cost to you and no value to us. Is that the problem? Pardon? I mean, they made this deal in the beginning knowing all risks. An inherent aspect of the deal also is when you deal with a counterparty under foreign law, you know that if they go into bankruptcy, foreign law will apply to the promises, and that's as true for creditors based in the U.S. as it is creditors based abroad. So your argument is not so much that there was a limit on the authority. Your argument seems to be the trial court abuses discretion in balancing the interests. Well, I think when you balance the interests, you're not going to give one group... I want to know if I posed that right. One thing to say limit of authority means you can't even get there. There's another thing to say he balanced the interests and in doing so abused his discretion by determining that in fact this interest existed. The answer, Your Honor, is both. We've articulated both theories. Both that he exceeded the power that was given to him. You haven't given me anything other than you just said that. I'm trying to understand how to put it in a context that I can figure out what I'm trying to understand in terms of our review, and our review is the abuse of discretion that you are articulating is that there was an improper balancing of the interests here, so much so that it created this... I think when you take one group of creditors and they receive a set of rights that other creditors who are similarly situated do not get under foreign law, one group is being treated more favorably than the other, and the point of sufficient protection... Well, that may or may not be so because the American court's not looking at the creditors in Germany. Well, I mean, the American court is looking at the American assets. How many patents are we talking about here? 4,000? Probably, yes. Okay. The American court's looking at 4,000 American-issued patents that have been licensed, and the court's saying that you can dispose, handle these in foreign court subject to it. I think, under the American court's order, the German court could strip those licenses off for purposes of German adjudication if it wanted. It wouldn't affect... Just like our order won't affect the German, the German order wouldn't affect enforcement of the patents in the United States. That's the problem. That's basically saying we will not give recognition. We will not give... Subject to limits. Congress can put limits on that. It did, 1506, Your Honor. That's the standard. If I may reserve the remainder of my time. Didn't they put limits in 1522, authorizing the bankruptcy court to impose protection? Protection in connection with granting powers in the U.S. that otherwise wouldn't exist. Thank you, Your Honor. Okay, thank you. Mr. Freeman, we'll hear from you. Thank you, Your Honor. May it please the court, Mark Freeman for the United States. The government appreciates the opportunity to address the court this morning. Judge Niemeyer, if I may go directly to your concern. First of all, the United States appreciates... Who agrees with you, Keith? Is it Minneapolis or the Appalachians or nobody? I believe nobody, Your Honor. Okay. Lucky position to be in. We're here, we participated in this case because we have the spectacle here of a United States bankruptcy court potentially, and this goes to your question, Judge Niemeyer, stating that foreign law has to operate in compliance with an exception under U.S. law. Now, I appreciate that the court doesn't construe the bankruptcy court's order that way. And that's a really... Public policy exception or the sufficient... Well, I'm addressing the... And I can address your question, Your Honor. What you're talking about right now. What I'm talking about right now is the actual language of the order as it developed against the bankruptcy court. But I want to do it in the context of the order that the judge gave. That's what I'm talking about. I'm looking right here at... I want to know which part you are now dealing with because I think they're separate. I think you could find it under either one, public policy, or you could go to 1520. Yes, Your Honor. I'm trying to be precise about this. This is a certified order appeal. Precisely which one you're talking about. I'm talking about paragraph one of the order entered by the bankruptcy court on October 11th. And he says, and I'm quoting, the protections of 365N shall apply to licensees of the foreign debtors' U.S. patents. Now, to the extent... And we're worried here because, remember, there were two bankruptcy court orders in this case. What page is that in the... I'm sorry. I don't... Amicus, we didn't have the joint appendix. I'm looking. It's the one-page order issued on October 28th, 2011. That sounds like the conclusion he's making. They shall apply, but in making that, he had to determine because there's a public policy exception or because there's a sufficient interest. And I ask which one you're talking about. That's right. Let me address both of those, okay? Our concern is that the entire inquiry that the bankruptcy court undertook in this case, and it's clear in the face of his order, was whether 365N should or should not apply. Now, that we think was error because what 365N is is a limitation on the power of a U.S. trustee in a U.S. bankruptcy proceeding to reject a license under Section 365. In this case... You say you can't even give 365N. What we tried to say in our brief was the inquiry that the court undertook here, we're trying to make a threshold point, was the wrong one. 365N cannot apply of its own terms. Now, what I take the court to be saying is that couldn't... If the bankruptcy court had issued a slightly different order, and maybe this is what he meant, couldn't the bankruptcy court say, look, I'm going to approve your sale order on the condition that you honor these licenses? Well, assuming, is the government saying that the bankruptcy court, and that's the order that we're reviewing, erred in balancing the interests of the parties? No, if the court had... Because it did that, what's wrong with it? And let me be clear about this. I understand Judge Niemeyer's question, the questions from the court, to be, can't the bankruptcy court, in a Chapter 15 proceeding, ask what conditions it may impose on affirmative relief? And I agree. Section 1522 says... Not on affirmative relief. Your brief, and I'll start there with my problem, your brief starts off with an issue that's not, I think, before us. You're trying to set up Section 103 of the German Bankruptcy Code in tension with what the bankruptcy court did under Section 15. And I'm suggesting there is no tension. Okay, well... What I'm suggesting, and as a matter of fact, the order, the bankruptcy said, it says, the application of Section 365 to the instant proceeding shall not in any way limit or restrict the right of the administrator to elect performance or non-performance of the agreements under Section 103 of the German Code. I believe that quote, Your Honor, I'm sorry if I'm wrong, but I believe that quote was as to the non-U.S. patents. Because he did say... Exactly, the U.S. patents are subject to American courts, and to turn over American control over U.S. patents, he did it conditionally as authorized by Congress. And if that is the order, respectfully, we don't read the order that way, particularly against the backdrop of the two bankruptcy court orders. Give me the one that you're troubled by. I'm troubled by the language in paragraph one of the court's order saying the protections of 365N shall apply. I'm looking at the supplemental order. That's the only one that dealt with 365N. That's right. I don't see that here. Let me back up, if I may, Your Honor. I understand the court's question to be, couldn't you apply conditions on the treatment of U.S. property? And bracketing the point made by Mr. Lampkin regarding whether licenses are security interests, I think is the right way to put it, in U.S. patents. Bracketing that question. Actually, the statute uses creditors' interests, and it seems to me the licensees are creditors' interests. The licensees are creditors if their contracts have been rejected and then they have claims against the estate. But, again, our point is section 1522B says, the court may impose conditions it deems appropriate on the granting of affirmative orders. So your question is what's the standard? The standard is what's appropriate in 1522B. Now, I would note 1522B says it gives us examples of what are appropriate conditions. The posting of a bond and the giving of security. Now, we tried to suggest in our brief that it's a different matter for a bank. You skipped over the authority the court had, which is to protect the court may grant relief to protect the interests of creditors and other interested entities. That's right. It talks about the use of a bond as part of that protection. And I think that this is just a statutory argument. I think that the question here really, if we're going to ask the actual question, is whether the limitation that the bankruptcy court imposed in this case is one that is consistent with the sort of conditions that Congress anticipated in section 1522. And the United States thinks that's a difficult question because what is really going on, what the objectors really want here, is the condition is we're not going to grant comedy to the outcome of the German proceedings. And we also know in this chapter 15, section 1525A, says the United States shall grant comedy and cooperate to the maximum extent possible. So we think it's a hard question whether a condition that a bankruptcy court can impose under 1522 can be. The condition is we will not recognize what happens in the foreign insolvency proceeding. That may be a hard question, but it is clear that the administrator here asked for this relief of 1521. It's also clear that the judge under 1522 has this broad discretion. And how you characterize 365 in relief, it really could be construed as a condition on the 1521 request. And I think, Your Honor, if we're going to be precise about how these statutory provisions operate, we have to be precise about 365 as well. Okay, 365 is a power of a U.S. trustee in a domestic case. 365, contrary to the bankruptcy court's initial supplemental order, which was mistaken, 365 does not apply in Chapter 15. Congress told us that. That's 11 U.S.C. 103A. It says Chapter 3 of the Title 11 does not apply in Chapter 15. So... They say that the judge then is limited in his broad discretion not to consider things that he thinks would condition the relief because he's balancing an interest? Your Honor, I'm not disagreeing that a court may balance interests, but we have to understand the predicate, the background against which it's balancing the interest. He's opposed to that balance. If he thinks it's a good thing to do, he can't do it? No, Your Honor, if I may be clear about this, I'm saying the bankruptcy court erred in coming into this case on the assumption that 365 applied, and the question, which it asked expressly in its order, was... It didn't apply mandatorily. The court invoked it in order to apply protection. The court said, I'm going to get that type of protection in this case after balancing the interest, right? No, I don't think that that's correct. That may be what he meant, but that's not what the court said. What he said was, I'm asking whether 365N should apply. The bankruptcy court was right, the first bankruptcy judge was right in his first order when he said, 365N applies to the extent the foreign administrator is exercising a power under 365, because 365N is a condition on the power of a U.S. bankruptcy court to assume a rejected contract. But to the extent he's not exercising such a power, 365N has no relevance. Now, if you were to ask... The key on that is the first one. When the bankruptcy judge made that first determination, then you get this motion that comes up, and the supplemental order comes down and says, I sort of inadvertently put that in. And then it goes up to the district court. I just don't quite understand how you then go back and say, your inadvertence, now that you put it in, you've got to tell us why you took it out. I agree with you, and that's why I find... You didn't bring that issue. I don't see that brought. I mean, the first order, in terms of remanded it, doesn't seem to be the cause. And I can't understand, because it looks interlocutory. So it goes back, and now it seems like that's a legitimate issue. What you essentially said was the bankruptcy trustee had to consider it, and now tell us why you took it out when the consideration should be... Tell us why it should be in. Your Honor, I think the reason is because the district court was wrong in its remand of the bankruptcy court, which resulted in a 4-day trial. But it is because it is built into this order. It is built into the order where it says 365N applies. When you appeal, you've got to appeal from the judge's order. You can't say it's built in in the ultimate one. Oh, he did that back then. That's wrong. You've got to say, oh, that part was wrong, too, to even send it back. Your Honor, I just have a closing comment, if I may. On that, I think it is in front of the court that the Yamaha case, this is a certified order appeal, and everything built into that order comes before the court. But if I may... You're going through a red light. Finish your sentence. Thank you, Your Honor. We think that the U.S. courts can't affect what happens in Germany, and if we are to say that a condition of granting relief in the United States is that we will not recognize the operation of German law... Let me ask you, that posits it again, right the way you did in the brief. And the court did not purport to affect the German law. The Germans can strip. Even with this order, the Germans can strip it. But the problem is the Germans are going to take American property subject to what the American law says that property is. It's a little bit like the plants that have the recorded liens against the property. An American court could say you're going to sell the American assets in the United States, but you're going to have to protect the banks who have liens against those assets. And that would be legitimate American interest, and we're not telling the Germans what to do in a German bankruptcy. I agree you would not be, and let me just say this. What you would be doing in that case is saying, German law provides for the stripping of these liens. That's the result. I don't agree with that accidentally either. Nobody seems to... That's being assumed. I agree with that. I agree with that. You just don't need to address the German law. I agree. But in your hypothetical, you would say foreign law provides for some outcome. And the question is, is the United States going to recognize that outcome? A foreign court has taken... is in a bankruptcy proceeding. Yes. And they're asking the United States court, bankruptcy court, to authorize the picking up of these American assets and putting them into that estate. 15 says we're going to allow that, allow the distribution by the foreign administrator, subject to the ruling of the bankruptcy court, which is 1522, 1521, which is discretionary. If I may just make this point, I don't think that's right about how Chapter 15 relates to the German court. German... imagine... nothing required the foreign administrator to come to the United States in a Chapter 15 proceeding at all. Imagine that there had never been a Chapter 15 proceeding. The German court would have run its course. There would be some judgment, some final resolution of the German insolvency proceeding. But isn't it relevant that he actually did come and ask for this release on the 1521? And what it is, Your Honor, and what I'm suggesting is... He sort of gave that judge that opportunity to have his broad discretion. And what I'm suggesting is... If he never brought it, you're right, it would never have been here. And what I'm suggesting is it's the same question, which is the German law has some treatment of these cross licenses, whatever it is. And incidentally, I agree that it's not clear how German law operates. But German law has some treatment of these cross licenses. And the question is, is the United States going to grant comity to that result? Or is it going to impose as a condition... Except the comity is defined in the whole of Chapter 15. We're going to... Congress defined the comity. We're not going to just give them a blank check. We're going to provide comity subject to these various conditions, which are adjudicated by American judges in an American bankruptcy court. I agree with that. And I think we should just be honest about the question we're answering, which is not 365N and whether it's important. It is a broader question. It is, is the United States, in this case, going to grant comity to the outcome of the German proceedings? And that's a... That's not the issue. We are not going to address how the outcome of the German proceedings are going to be. I agree. You're not going to address... No, we're not addressing whether it's equal, whether it's unequal. We're addressing American patent law and your licensing law. And as I understand the court, the court would be saying that process runs its course. It embodies some German judgment for German purposes. And the question is whether in the US we're going to honor that. The question is to you that the German court could take these assets, these American assets, and for purposes of the German court could strip them all if they wished. And we wouldn't interfere with that. And I understand that we wouldn't interfere with that. I understand the point, but... That isn't the way you're stating it. You're stating that we are telling the German court how to do things. No, what I'm saying is when I speak of granting comity, I don't mean telling the court what to do. What I mean is are we going to incorporate as a matter of US law? Are we going to give US domestic legal effect to what the German court did? That's comity. No, that isn't what we're told under 15. We're told the petition was to address American assets. It's sort of like an NREM. It's got the characteristics of an NREM. It's not going to the proceedings. It's declaring the American property's nature. And, again, I suppose we're just talking past each other at this point, but I do think that... Well, it's important because it seems to me that if we start guessing what the German outcome is going to be and how it's going to affect the German proceedings, we have to know what the German law is, and then we have to start adjudicating the German law. And I don't think we should be in that position. And, candidly, Your Honor, the concern... We don't believe that either. No, our concern was that the bankruptcy court was doing that, and we're gratified to hear the court doesn't think that it's doing that. But I do think that, ultimately, at the end of the day, the question for this court, the reason why the licensees are here is because there's a German proceeding that's going to do something that they don't like, or may do something that they don't like. And they want a US court to say, for purposes of US law, you still have your licenses. I would be interested in seeing, and I don't know how you get it before us, but I would like to see the language where you believe the bankruptcy court was interfering with the German court. The language I see is just the opposite. The bankruptcy court was saying, we're dealing here solely, it says, solely with respect to the contracts subject to such motion. That's the one here. And it basically said, we're leaving alone what the German court's going to do under Section 103. We may just be – I think the bankruptcy court was a little unclear in how it – We'll look at it again. Okay. Thank you, Your Honor. Okay.  May it please the court, my name is Bill Pratt from the law firm of Kirkland & Ellis on behalf of the appellee licensees. We have said that we do not believe that the actions of the US bankruptcy court in this case interfered with the application of German law in the German bankruptcy, a subject that some of the questions this morning have addressed. What the US bankruptcy court did was, under US law, issue an order in response to a request from the foreign representative to be able to sell and distribute assets in the United States, issue an order that conditioned, under US law, the sale or distribution of those assets which were US assets, US patents. The court, by doing that, in effect refused to recognize, for purposes of the US assets in the US court under US law, the rejection power that Dr. Yaffe is claiming under German law, but there's no tension between the activities of the two courts. Let me ask you this. Yes, sir. If the bankruptcy order were to remain in this case, would Mr. Yaffe be able to go to the German bankruptcy court and ask that court to strip the patents, the American patents of the licenses? Your Honor, he could certainly make that request, and I suspect that the analysis in the German courts would be somewhat similar to the analysis that took place in the US when the reverse situation occurred, and it may well be, as a matter of German law, that the German court could make such an order. I don't know German law. I think the important point is that the reason Dr. Yaffe came to the United States under Chapter 15 is that to, in any way, realize the value of the US patents and US assets, at some point he has to deal with the US courts. The government acknowledged that by saying they have no issue with the issue of the licensing rights were dealt with later in the Chapter 15 proceeding? I think the government's interest, and I'm hoping that the dialogue, at least where I think the bankruptcy court was headed, is not to interfere with the German court. I think the interest of the Justice Department is to have comedy and to have the harmony that's created by this scheme, and I think that's quite important. But I see a big distinction between a US court trying to mandate and interfere with the German court, telling the German court what to do, and addressing simply somewhat in the nature of an in-rem process what the US patents are, how long they last, if it's a 17-year issue versus a 15-year issue. I don't know how long the German patents are, but let's just assume the German patents are 15 years and the American patents are 17 years. They can't all be treated the same unless they want to change the American patents, and in an American court they couldn't do that. And if the license were coterminous with the patents, then you'd have an issue if somebody tried to change the law. Germans would have to treat the German patents under the law issued by the German patent office and the American patents under the law under which the patents were issued in the United States, at least as far as the American patents apply. And I suppose if we had this ultimate tension, then the patents would have different enforceability in different countries. I think, Your Honor, the practical reality, and I do believe it is reflected in the position the government takes, which is you've got to study their entire brief to understand their full position. The reality is that whether there had been a Chapter 15 case or not, whether the court had issued an order in a Chapter 15 case that was later disagreed with in Germany, under any circumstance, Dr. Yaffe cannot, as the insolvency administrator, try to take advantage and realize value with respect to the patents as it relates to these objectors without coming to the United States and dealing with the United States court under U.S. law. The government said this could all come up later in a Chapter 15 proceeding, in the so-called Section 363 sales hearing. Or if there had never been a Chapter 15 case, Dr. Yaffe would have had to come to the U.S. and file a series of patent infringement cases against all these objectors. And at that point in time, the objectors could have made all these same arguments in the context of why the court should not give comedy, the U.S. court, as the U.S. assets give comedy to the actions of the German court. What do you say is the relationship between Section 1506 public policy and Section 1522's limit of discretion? Well, there are two separate provisions of the bankruptcy code in Chapter 15. Let's take them one at a time, and we'll see how they fit together. Chapter 1522, as Your Honor's question earlier acknowledged... And being separate, do you say that on either one of those provisions you could prevail? Yes, sir. There are two separate grounds that are separate and independent in the bankruptcy court's order. If this court agrees with either of those, the decision should be affirmed. Yes, sir. It seems like you spent a lot of time on that public policy section. Yes, sir, because in part, I think the Section 1522 analysis and reasons why the court's decision there should be affirmed is very straightforward. I think it's very clear in the language of Section... because you think 1522 is very straightforward. I think it's easier... So you didn't need to spend a lot of time. I think it's easier to explain in a very strong way our position under Section 1522. I think we're equally strong under Section 1506. I think it involves more than simply... The policy side of it, I would say, is weaker. Would you not say, I mean, given, in fact, the way you put there, it looks like you could apply to anything when you're dealing with a statutory or constitutional right. For instance, you've got three countries involved. You've got all these things going on. I mean, U.S. interest is going to be hit just about every time from that side. Your Honor... But dealing straightforward with the 1522, why do you say that's straightforward? Because I've tried to flesh that out, and I'm not sure I'm there yet, but I'm trying to understand it. What is that limitation that the other side keeps saying is there on 1522? Well, what it's not is that the court under 1522 is somehow limited to imposing conditions only as to specific statutes that the foreign representative asked for. That's not the limitation. Section 1522... Do it to a sponsor. It can do so if it determines under Sections A and B of 1522, and I believe both need to be read together to understand the breadth of the power given to the bankruptcy court, the breadth of the discretion. It can do so if the court considers it appropriate in order to sufficiently protect the interest of creditors. And I think what's important is that 1522, and this goes to your distinction between that and Section 1506, Section 1522 emerges only when the debtor comes to the court under Chapter 15 and asks for affirmative discretionary relief under two sections, 1519 and 1521. And he's done here under 1521. He came to the court under 1521. He asked the court for the full authority granted under both 1521A and B, which included the authority to have full responsibility for all the U.S. patents, to sell and distribute them in any way he chose. At the same time, as we said in the record, he was sending out letters to our clients threatening patent infringement, telling them what had happened in Germany and that we had lost our rights. And at that point in time, we went to the bankruptcy court, and we said, Your Honor, we believe that in order to obtain the sufficient protection to which we are entitled before you grant that relief under Section 1521A and B, you need to fully consider our interests as well as Dr. Yaffe's. That was the four-day trial we had. It was an extensive record created on these issues, Your Honor. The court went through in its decision the careful balancing process. It didn't ignore Dr. Yaffe's interests here. It covered the interests of both parties and explained why, in its discretion, the interests of the creditors here, in this case the licensees, deserve sufficient protection under Section 365N. Well, that's the slight confusion I was getting. Yes, sir. The first and the second, the first remand, and that is the bankruptcy judge took it out, and essentially he said, you know, I am in aversion. Then he gave a framework for why he had taken it out, and then based on what he said in that framework, the district court sent it back, remanded it, so that he could then put it in the right framework, and that's when he reversed himself. And it seems odd because if the bankruptcy judge had only said in the first instance, I inadvertently put it in and didn't give a framework, could that district court have said then go back and do this balancing at that point? Yes, Your Honor, and in two different ways that could have arisen. One is simply under the language of Section 1522, let's assume that an order had been issued by the bankruptcy court that didn't include 365N in the first instance. We would have been able to go into court at that point under 1522 and ask the court to modify the relief granted in a way that protects the interests of the creditors and that that relief can be modified in ways that the court considers appropriate. We would have introduced all the same evidence. There's another very important point. Under Section 1521 itself, and I'm referring specifically to 1521B, which is one of the affirmative reliefs the representative sought, any grant of power to him to distribute the U.S. patents in the United States can be provided only that the court is satisfied that the interests of creditors are sufficiently granted, sufficiently protected. What's important about that is the relief sought itself in that provision contains a sufficient protection standard. No notice was given to all the licensees who received these threatening letters about the initial petition for recognition and the initial request under 1521? I'm trying to understand, if the bankruptcy judge in the first instance that you said gave no relief on the 365N, those conditions, doesn't even bring it up, I'm having some difficulty understanding how then he gets into a balancing. It's a different question if he gives it and then the question comes up, did he properly balance it? So, I mean, he's not compelled to give it in the first instance, or is there anything that would compel him to give it in the first instance? It only comes up because he did, in fact, give it in that supplemental order. Your Honor, I'll address that, but if I could just finish the point I was about to make. We should have received and did not receive notice as creditors of the initial petition for recognition and the initial request for relief under 1521B. Had we received notice, we would have gone in before the court ever issued any order under the sufficient protection standard of 1521B and made all these same arguments. To go to Your Honor's question. Which that sort of relates to it, and I'm trying to understand what that means because, again, I'm only dealing with, in the first instance, how does an issue, it's not this case because he did, in fact, put it in there. Yes. But the way the district court remanded this thing was this restrictive, that framing of the issue. Yes. And that's how it got back to the bankruptcy. But if he'd only said, I inadvertently put it in, I don't know how it would have gotten back to it because then he's got to say, go back and put it in and balance interest. I don't think that's required. In a case going forward, it could come up in either of two ways. In a case going forward, a foreign representative is supposed to provide notice when seeking a petition for recognition, particularly when seeking affirmative relief to affected creditors. At that point in time, the creditors could come in before the court issues any notice whatsoever, any relief whatsoever, and argue under 1521B, before we ever get to 1522, before any relief is given, argue that in order to be sufficiently protected, the court needs to condition the request for relief. That's one way it could come up. Secondly, if the court goes ahead and issues the order and does not include the protection, then under 1522, interested creditors are permitted to come to court and seek a modification or termination of relief, arguing that to do so would be in the interest of the creditors to be sufficiently protected. Isn't the government arguing that under 1521B, that type of condition, 365N is not a condition that is available? Yes, and we disagree with that. And the reason we disagree with that is that the relief sought by the bankruptcy debtor, in this case the foreign representative, was released to sell and distribute the assets. And whether we came in and said the condition needs to be called 365N or whether we come in and said put words in the order that says any ability to sell is subject to our patent licensing rights, either way, that's the condition that would be imposed, and we were entitled to argue for that condition under the rubric of sufficient protection very clearly under Chapter 15. Let me change the subject for a minute. Yes, sir. How do you respond to the FAA's assertion that they are now receiving nothing of value for their cross licenses? Well, first of all, Your Honor, and there's a question, I believe, from Judge Niemeyer that addressed this. The contract that was formed between the parties at the time the patent licenses were entered into were contracts that were fully paid up and were all consideration was exchanged at the outset. Both parties could have anticipated and built into the contract some conditions about what would happen in the event one of the parties later went out of business. That was not done. The contract was fully formed, fully paid up on both sides, and went forward. The fact that there was an event later in the market that changed Kimanda's position doesn't change the sanctity of the contract that was entered into, so we disagree with that characterization of what happened here. I'd make a second point, which is typically in bankruptcy, when a contract is rejected, in the United States, the entire contract is not voided. A rejection of a contract means that the debtor's obligation to perform going forward is terminated, and a breach of contract claim arises on behalf of the creditor to proceed in the bankruptcy court. That distinction was made by Judge Easterbrook recently in the Sunbeam Products case in the Seventh Circuit. Bankruptcy rejection is not extinguishment of a contract. It is rather the extinguishment of the obligation of the debtor to perform going forward. It might be a constitutional problem otherwise. Yes, sir. Yes, sir, and so I think that's another fundamental flaw with the government's position and Dr. Yaffe's position. Would the court like me to address 1506 next? I'll go in any order the court would like. You handle the argument the way you think is best for your client. Yes, sir. I thought you told me that 1522 was straightforward. You just didn't, I mean, if it's straightforward, why do you have to deal with this public policy thing here? It sounds muddled, and if I understood your answer,  I need to say a lot more because that 1506 was really something more muddled than 1522 was straightforward. Not more muddled, more complicated, Your Honor. More complicated. If Your Honor wants to render a ruling now on 1522, I'll stop. To follow up on Judge Wynn's question, I think the point is if the bankruptcy court acted within its authority, it would not need to invoke and did not invoke 1506 because it says it authorizes the bankruptcy court not to do anything under this chapter if it would violate the public policy. But it seems to me it was not. That's a catch-all authorization to protect the public policy of the United States. As Judge Wynn said, to define the public policy is an interesting issue. Yes, sir. One way in which 1506 differs from 1522, to go back to an earlier question from Judge Wynn, is that Section 1506 is a provision that applies throughout the entire Chapter 15 proceeding. It's not triggered just upon the request for relief. And here we believe and certainly argued, and we believe argued effectively in the evidence supported the proposition, that there is a fundamental public policy in the United States having to do with the prohibition on the rejection of intellectual property licenses in bankruptcy that would be violated if Dr. Yaffe were to prevail here. And so we did introduce all the evidence, substantial evidence in the record, in the joint appendix, the court can see that evidence, of the reasons why that policy would be violated and the reasons why that policy was fundamental. It was a very fact-intensive inquiry. That's fundamental. And that always triggers some constitutional questions in my mind. It's manifestly a public policy, I think is what the word is, isn't it? Yes, sir. And manifested means, I think, open, clear, palpable, something that we can see rather than maybe manifested, manifestly contrary. Manifestly contrary. That means openly contrary. Yes, sir. And there's also some... It's a public policy, but the public policy has no adjective. That's correct, Your Honor. But there is some authority in the law, which we discussed in our brief, that when Congress uses manifestly, that that is an indication that the policy interest at issue should be, we use the word fundamental, very significant, very substantial. The word fundamental itself. The word manifestly modifies contrary, which is sort of the level of proof. Public policy just stands there in the statute. Your Honor, I've given a lot of thought to that point. I understand. And if I had been in Congress, I might have moved the word, but I believe if you look at the case law, wherever manifestly... I don't know, but we get to do our own Fourth Circuit law. Yes, sir. Yes, sir. Yes, sir. Unless the Supreme Court has told us. Is that a Supreme Court interpretation of manifestly contrary? Your Honor, the cases I'm thinking of are from the federal circuit courts. There may be a Supreme Court case, but it does not come to mind right now. Okay. In any event, the point I was making in response primarily to Judge Wynn's comments is we don't feel that the decision grounded on Section 1506 is a weak decision, a weak basis. We did feel like there was a substantial amount of evidence that needed to go into the record on that issue before the court could make the discretionary determination that, A, there was... It really makes it very broad. I find it hard to figure out what is not when you have that level of conflict. What will not then be a public policy exception, and whether that is something that is inherent in 1506. Well, let's look more closely at the standard the district court set forth and the bankruptcy court applied. There were really two elements to it. One was that there has to be a right at issue, and it can be a right from the Constitution or a federal statute. And second, there has to be a determination that it is a fundamental right that can't otherwise be protected. So the bankruptcy court very clearly was focused, and should be focused based on the directions from the district court, on the policy being fundamental. Their word, it could be significant, but fundamental. It said at page 31 of the decision, the inquiry therefore resolves to whether the application of the German law to the extent it allows U.S. licenses to be canceled severely impinges a U.S. statutory or constitutional right such that it would defeat the most fundamental policies and purposes in the United States law. And so we do believe there was an element both in the standard and certainly in the proof that was given to that bankruptcy court before he issued his decision of the fundamental nature of the policy at issue here. I'm happy to address that proof for the court, but we believe it was substantial. And that is the, what is that, the Americanness of it? Innovation? Is that the technological innovation? The shorthand is the need to preserve and protect innovation in the technology sector in this country, Your Honor. And we commented two weeks before the trial, the State of the Union address talked about it nine times. I know that's just an aside, but in this country today, we all know the economic problems of our country. We believe an economic problem can qualify as policy. We're no longer a manufacturing country to support our middle class. The one area we've remained preeminent in technology, it employs so many people in this country, so many of the great innovations in the last 30 years, smartphones, computers, have come out of the sector. And this sector can't survive without the certainty of patent licenses. It can't survive in its present form. And our evidence was very strong on that. There's a patent thicket. There are thousands of patents that go into a cell phone, an iPhone, or a Samsung. I found this term, patent thicket, very interesting because it sounds to me like a real problem these days, that innovation, it's hard to continue with innovation without running into somebody's patent when there are thousands being issued every day. It's true. That way, Your Honor, and it's hard because the court recognized the gamesmanship that goes on. People are buying and selling patent portfolios every day just for the purpose of going out and trying to bring serious infringement cases. You and Apple solve all your problems, and that will create a lot of peace. Your Honor, that would certainly help things. That would certainly help things, Your Honor. But the evidence was very strong on the point, and we believe that all the way back to when Congress enacted the statute at issue, Congress recommended the fundamental threat to our economy, even back in 1988, to not being able to protect patent licenses. We think the proposition that that is a fundamental policy interest to the United States and it clearly would be undermined by Dr. Yaffe prevailing here was very strong evidence. Finally, I wanted to comment for just a moment on the government's position because we had to study, at least I had to study that brief a lot of times to really, I think I understand what the government is saying. And I want to point out to the court, the government is not at all saying that the issue of the rights of the licensees to their patent licensing is not an issue that the U.S. courts will need to decide and should decide. They're not disagreeing with that. They're not even disagreeing that the bankruptcy court in the Chapter 15 case is necessarily the wrong party to decide it. I read the government's position, and I gather, talking with counsel today, that the concern of the government is that we not unduly interfere with the comity that is necessary between Germany and the United States and under our law, this globalization of cross-boundary bankruptcy. And it did take a strong position saying we shouldn't be involved in this at all. But it seems to me it's making a point, and the point is to don't interfere with the German law, which I think is probably a pretty good point, don't you? It's an excellent point, but there were two very strong comebacks to that, and one has already come up today, which is that's not what happened here. What the U.S. court did doesn't interfere with the application of German law in Germany. It's a lack of recognition as to U.S. assets in courts in the United States of the effect of that German rejection. Judge Floyd, so leaving the status of the license is uncertain would have a downside complication to the CF, wouldn't it? Yes, Judge Floyd, and that actually goes right into the point I wanted to make. The government says, even though the court did not have authority to invoke 365 when relief was requested, it turns around and says at page 31 of its brief, but we were free to argue at the time of the Section 363 sales hearing where there's a sufficient protection standard. All these same points, and to argue to the court that in letting Dr. Yaffe sell, he needed to condition that sale responsibility on protecting our rights, and to go to Judge Floyd's point, that's a year or two later. There was a Section 363 hearing. It was a year or two down the road. That's another year or two of money, burden, expense, and uncertainty. It's unnecessary. All the same issues would have gotten resolved, and in fact, when Dr. Yaffe sought authority under Section 363, this issue was in dispute, so we reserved our rights to have a full hearing on that issue in the event that 365N ultimately did not apply. It's the very same standard as exists under 1522. The government's not saying the court couldn't deal with it. It's just questioning the timing of it, and I think they got it backwards. I think later is worse than sooner. I think sooner is better in a world in which the big harm is uncertainty. Anything else? No, Your Honors. Thank you. Thank you, Mr. Pratt. Mr. Lamkin, you have some rebuttal. Judge Cardozo said that we are not so provincial as to think that every solution to a problem is wrong because we at home have treated it otherwise. Chapter 15 recognizes that as a principle. The rule before Chapter 15 was what everyone called the grab rule. If you had a bankruptcy with assets all over the world, each country would apply its own law to the assets that were located there. You ended up with fragmented rules and different rules being applied throughout. The whole point of Chapter 15 was to end that way of doing things and instead have the debtor's assets and liabilities determined under a single law, the law of what is called the Comey, the center of main interest of the debtor. Do away with all the local law, and unless you have a fundamental public policy violation, it is the law of the center of main operations that is going to control everything, regardless of where the assets are located. It doesn't quite say it the way you just said it. It doesn't say unless. To the contrary, it authorizes the court, the bankruptcy judge, to refuse to act if doing so would violate the policy, which is just the flip side. Right. So the question then comes is everything you said is right, but isn't that a yielding accommodation still subject to the conditions Congress authorized the bankruptcy court to do? I think that is the question. One, is recognizing a foreign proceeding and giving effect to foreign law, recognizing that it will apply, violate the public policy violation merely because foreign law has a different type of rejection power than the U.S.? That was one way you approached it. The other question I think is with Judge Wynn focusing on Section 1522, and there's two problems with the bankruptcy court's Section 1522 analysis. Section 1522 can't be the assets are local, and we think that the assets should be treated under U.S. laws as a matter of fairness because they're local, because that was the grab rule Congress got rid of. It has to be something more than we like U.S. law better, something more than we think U.S. law is more protective of these people's interests. It has to be that we have given the court some power under U.S. law that is going to produce a result. It is not fair because it's not the result that applies to all the other proceedings, everybody else in Germany, or it's not the law that would apply if everything were in the U.S. It's an untoward result. It's situations where I think Judge Niemeyer, you pointed out the stripping of a lien in order to move the assets abroad. Well, stripping of the lien, and this happened in the- I wasn't actually thinking of moving abroad, because I would think the idea is if you have a plant, a chip manufacturing plant in the United States that has a mortgage on it of a few million dollars, doesn't this statute authorize the American Bankruptcy Court saying that this property in the United States is subject to a lien and will be disposed of that way? Then it's without interfering with the German proceedings, the German court can do what it wants, but it still has to take into account that in the United States the property is subject to a lien. Any answer, Judge Niemeyer, is absolutely and categorically no. German law or foreign law would control the disposition of that asset. It's all done under one country's laws. Now, if there is something odd about the transnational nature- What happens to the foreclosure? Pardon? Where would you file the sale papers and so forth? I mean, you know, every state has a foreclosure statute. You're saying that that would all be usurped? No, Your Honor, but I think when it comes to- I think that the trustee would have similar powers to what anybody else in the United States would have in terms of trying to comply with U.S. law. But the bottom line is, when it comes to organizing the priorities among competing creditors, and there's no doubt that the objectors are creditors, just like everybody else, the question is, what rights do they have? And the rights they have in the assets of the estate of this embarrassed debtor in Germany, the answer is, that is a question of German law and it's absolutely a violation of fundamental public policy. Let's grant that. Okay. That doesn't address the issue here, I don't think. I mean, the next question, I think, is Judge Wynn's question about Section 1522. The abuser of discretion was thinking that the sufficient protection could simply be we want them to be as protected as they would be under U.S. law. If we just allow German law to have an effect on the United States and strip away these rights, they are not sufficiently protected. That's not what sufficient protection is. He didn't say that. Basically, he's saying these are American assets with licenses that we protect and made this factual finding, this balancing. Judge Niemeyer, that simply reveals Chapter 15 comedy. It simply says, because they're in the U.S., we're going to apply U.S. law because we balance U.S. Why do we have Chapter 1521, 1522? They're all in there for some purpose. Right, they're in there because when you give foreign representatives powers under U.S. law, powers they might not have under foreign law, that can yield untoward results. For example, the power to examine witnesses and conduct discovery. That could disadvantage creditors who are subject to that power, but other creditors are not subject to that power abroad. That's the type of thing 1522 is looking at. It's not saying, gee, U.S. law is more protective, and we think these people should have more rights than they would have. If this whole thing occurred, if everything occurred and all the assets were in Germany, that's the one thing the court certainly can't do. And I wanted to point out in return to Judge Wynn's question about the final judgment rule and exactly what happened here in terms of what's before the court. 1519 and 1521 are very clear that the relief has to be asked for by the foreign representative. And the relief here wasn't asked for by the foreign representative, and the abjectors can't ask for the relief. And so the bankruptcy court said, you know what, it was improvident for me to put 365 in. It was therefore free to pull it out without referring to Section 1522. Because 1522 only refers to relief granted under 1519 and 1521, only to relief that was requested by a foreign administrator. And so he had the power to just correct his error with regard to 1521. I think you're absolutely right on that. And that issue is before the court here. The final judgment rule that applies generally is that if you have an interlocutory decision, the bankruptcy court decision remanding thing, you, Judge Mayer, you made a mistake. You weren't supposed to pull that back out once you put it in. It was stuck. It's a one-way ratchet. We couldn't appeal that. It was interlocutory. But when this came to a final judgment and got certified up, that brought up the whole case before this court. Everything that happened before is before you. It's all open, including the fact that the bankruptcy court, excuse me, the district court, flatly made a mistake in saying, you know, Judge Mayer, I know you think you made a mistake and put in 365 by mistake. It should never have been there. You had the right to pull it out. I think you have to go through 1522 to pull out something that should never have been there. That was an error, and that's an error that's before the court, and it's one of the ones we specifically brief in this case. Well, because he didn't, the bankruptcy judge didn't just say, I can't at first put it in. He went on and explained why he was taking it out. Yeah. And his explanation was the problem. And the court sent it back and said, no, that's not the right explanation. And all they had to do, I think all they had to do was go back and report it, take it out, and go back and say, okay, I didn't put it in. Well, actually, quote, on page 261 of the joint appendix, it's inclusion of 365 in the sum of what was in Providence. I goofed. It shouldn't have been there. He did go on at greater length, but the one thing. That's the problem. It's going on. You know. If you stop there, I think you can play with it. The statute gives the answer anyway, because section 1520, 19 and 1521 are relief requested by the foreign administrator. We didn't ask for 365. It shouldn't have been there. What he asked for is he said he asked for an order that the administration or realization of all or part of the assets of QAG within the territorial jurisdiction of the United States shall be entrusted to the petitioner, and the foreign representative is hereby established as the exclusive representative of QAG in the United States. That's right. And so he's asking for control over those assets, and the bankruptcy court is saying, okay, you get control, but you're going to take those assets the way they were created under American law. And that's exactly the mistake that Chapter 15 erases. It's the grab rule. It's local assets, local law. Chapter 15 wipes that out, Your Honor. And I think if the court were to rule that local assets, local law, it would be nothing more than taking Chapter 15. Why do you use those handles? They're cliches. The court looked at these assets and said they're subject to protection based on an evaluation following a four-day trial. It's not a formula he applied. He made a judgment call. Right, but he made a legal error in that judgment, Your Honor. And the legal error in the judgment was thinking that it was a problem to not protect assets the same way that U.S. law would protect them as opposed to the problem he's supposed to address. I didn't say the way the U.S. law would protect them. He just said this is the protection. But it's not enough. He has the idea that it's just some balancing sense, not enough. That's legal error as well, what he's supposed to be addressing. Why couldn't he do – tell me what he did in error under 1521B and 1522 in terms of adjudicating the protection. Right. I mean, there are a number of errors. The first is the legitimate interest that the objectors have is the interest that the law of the center of main operations would give them. If this whole thing were, if what was going on in Germany, if this whole thing in Germany, what would their rights be? If nothing happened in the United States, they're entitled, they have every legitimate expectation to be treated as if they were there in Germany and everything occurred in Germany. The thing they're not entitled and they have no legitimate interest in is better treatment according to U.S. law because of the happenstance. We don't know that. And the bankruptcy court didn't make that determination. It doesn't say I'm going to give you better interest or worse interest. The bankruptcy court said I'm applying the protection portion and concluding that these assets are entitled to protection. Right. And it's authorized by Congress to make the determination. To give protections that U.S. law would provide and German law potentially does not as opposed to deferring to German law. And I think I should end with just one clarification, Your Honor. I think there may be confusion as to which order is applicable. If the court is looking at the order on page 267 to say that there was no interference with German law because it says 365N only applies if a foreign representative rejects an executive contract pursuant to section 365 and not under foreign law, that was the order that got reversed. That's the order that got remanded. And instead, the ruling is basically a declaration that U.S. law will not respect German law to the extent German law says. Where is that in the? 267. That's the order. Applicable one is 267? No, that's the one that got reversed. I want to know the applicable one. The applicable one, Your Honor, comes later. That 1,000. The district court opinion. 1024. 1024. It says that the debtor 365 shall apply to the license of a foreign debtor's U.S. patents. That is, in effect, a declaration saying, we don't know what German law is going to do, but whatever it does, it cannot have the effect of eliminating the promise of the license with respect to the U.S. patents. Thank you, Your Honor. Thank you. All right. Is that it on this? All right. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Henry F. Floyd